#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DELBERT MCNEIL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. CIV-07-1415-HE |
| | ) |
| BRUCE HOWARD, Warden, | ) |
| | ) |
| Respondent. | ) |

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254, seeking habeas relief from his state court conviction. United States District Judge Joe Heaton referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A response has been filed, and the time for filing a reply has now passed; thus, the matter is at issue. For the following reasons, it is recommended that relief be denied.

By this action, Petitioner challenges his conviction obtained after a jury trial on one misdemeanor count of resisting an officer, for which he was sentenced to one year of imprisonment in the McClain County jail. Case No. CF-2003-180, District Court of McClain County, Docket; Response, p. 1.[1] On direct appeal the Oklahoma Court of Criminal Appeals affirmed Petitioner's conviction and sentence in a summary opinion. McNeil v. State, No. M-2005-970 (Okla. Crim. App. Oct. 25, 2006) (attached to Response as Ex. 3); Brief in

---

[1] Petitioner did not file his application for a writ of habeas corpus on the required form; thus some background details that normally would have been supplied by Petitioner have instead been derived from the Response.

Support of Petition, p. 3. Thereafter, Petitioner filed an application for state post-conviction relief which the trial court denied. Response, Ex. 4. (Case No. CF-03-180, May 1, 2007); Brief in Support of Petition, p. 3. On appeal, the Oklahoma Court of Criminal Appeals affirmed the trial court's decision. McNeil v. State, No. PC 2007-525 (Okla. Crim. App. Oct. 17, 2007) (attached to Response as Ex. 5).

Petitioner raises three grounds for relief. In Ground One, Petitioner alleges that exclusion of a videotape recorded by the dashboard camera on the arresting officer's patrol car prejudiced his defense, resulting in a miscarriage of justice. Brief in Support of Petition, p. 5. In what is in effect a sub-ground of Ground One, Petitioner alleges in Ground Two that exclusion of the videotape prejudiced his ability to demonstrate that the arrest was not supported by probable cause. Brief in Support of Petition, p. 8. In his third ground for relief, Petitioner argues that his appellate counsel was ineffective for failing to raise exclusion of the videotape and the lack of probable cause as an error on appeal. Brief in Support of Petition, p. 9.

**I. BACKGROUND**

On June 2, 2003, at approximately 11:00 p.m. in the evening, Oklahoma Highway Patrol Trooper John Anderson observed a pickup truck traveling on the interstate at a high rate of speed. Trooper Anderson activated his radar and clocked the truck traveling at 90 miles per hour. Trooper Anderson then turned around, activated his emergency lights, and proceeded to pull the truck over. Trial Tr. Vol. I at 158 (Transcript of Jury Trial, Sept 29-30, 2005). As Trooper Anderson approached the pickup truck, he observed a gas can with a hose

attached to it in the bed of the truck. <u>Id.</u> at 161, 163. Trooper Anderson believed these items to be associated with the manufacture of methamphetamine. <u>Id.</u> Trooper Anderson ordered Plaintiff to exit his vehicle. Trooper Anderson then ordered Plaintiff away from the side of the interstate and told him to move to the bar ditch alongside the highway. Trial Tr. Vol I, p. 163-64.

A camera mounted on the dashboard of Trooper Anderson's patrol car was activated at the time of the stop, making a video recording of the stop and subsequent events. Transcript of Proceedings, p. 15 (Nov. 4, 2003). Although Petitioner and the Trooper cannot be seen on the videotape when they moved to the bar ditch, the audio portion of the videotape reveals Trooper Anderson using a loud and excited voice and repeatedly commanding Petitioner to put his hands behind his head. (Videotape, Ex. 1). It appears Petitioner initially attempted to lay down because Trooper Anderson commands Petitioner to stand up and put his hands behind his head. <u>Id.</u> Petitioner is heard stating he is getting a cell phone and Trooper Anderson responds that if Petitioner pulls out anything but a phone, Trooper Anderson will kill him. <u>Id.</u> Trooper Anderson continues to shout instructions to Petitioner as he observes him drop something to the ground. <u>Id.</u> Trooper Anderson then tells Plaintiff to go down on one knee, then to lay down and put both hands behind his back. Petitioner is twice heard saying "I am," in response to Trooper Anderson's commands to put his hands behind his head. <u>Id.</u> Trooper Anderson then gives increasingly forceful commands for Petitioner to put his hands behind his head. <u>Id.</u> As a result of the June 2, 2003, traffic stop, Petitioner was charged with Possession of a Controlled Dangerous Substance

(Methamphetamine), Resisting an Officer, Possession of Paraphernalia, Speeding, and Littering. Following a jury trial, Plaintiff was convicted of Possession of a Controlled Dangerous Substance, Resisting an Officer and Speeding. See Response, Ex. 7 (Summary Opinion, Case No. F-2004-197 (June 8, 2005)). The Oklahoma Court of Criminal Appeals reversed the convictions and remanded for a new trial on the counts of Possession of a Controlled Dangerous Substance and Resisting an Officer. Id. at 2-3. Upon retrial, Petitioner was found not guilty of the charge of Possession of a Controlled Dangerous Substance, and as noted above, was convicted of the charge of Resisting an Officer. See Response, Ex. 3 p. 1.

## II. STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct

governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

If a state court resolves issues in a summary disposition with little or no legal reasoning, a federal habeas court still owes deference to the result. Paine v. Massie, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." Id. (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).

## III. DISCUSSION

### A. "IN CUSTODY" REQUIREMENT

At the outset, the undersigned notes that it appears certain that Petitioner cannot still be in custody pursuant to the conviction he attacks herein. For a federal court to have subject matter jurisdiction over a habeas proceeding, the petitioner must be "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254; accord Maleng v. Cook, 490 U.S. 488, 490-91 (1989). As such, federal courts normally lack jurisdiction over petitions which challenge a conviction with a completely expired sentence. "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack

5

upon it." Maleng, 490 U.S. at 492.

Although Petitioner is serving another sentence, and a "prisoner serving consecutive sentences is 'in custody' under any one of them" for purposes of filing a petition for a writ of habeas corpus, Garlotte v. Fordice, 515 U.S. 39, 45-46 (1995)[2], the state court in this case ordered the one-year sentence for the conviction now under attack to be run *concurrently* with a remaining twenty-year sentence of imprisonment in Case No. CF-2003-212, District Court of Garvin County (manufacture of controlled dangerous substance - methamphetamine - after former conviction of two or more felonies). See On Demand Court Records, McClain County, Case No. CF-2003-180 (Oct. 5, 2005); On Demand Court Records, Garvin County, Case No. CF-2003-212 (Oct. 24, 2004).[3] Thus, this situation differs from that in Garlotte because even if the Court were to grant relief from the sentence in Case No. CF-2003-180, Petitioner would not be entitled to release due to the concurrent sentence in Case No. CF-2003-212. Accordingly, it is recommended that this action be dismissed for lack of subject matter jurisdiction. However, the State has failed to address the "in custody" issue in its response, and so it is alternatively recommended that relief be denied on the merits for

---

[2]In Garlotte, the petitioner was incarcerated on consecutive sentences of three years and two life sentences. 515 U.S. at 41. He sought to attack "a conviction underlying the sentence that ran first in a consecutive series, a sentence already served, but one that nonetheless persist[ed] to postpone Garlotte's eligibility for parole." Id. The Court concluded "that Garlotte remain[ed] 'in custody' under all of his sentences until all [were] served, and [then could] attack the conviction underlying the sentence scheduled to run first in the series." Id. The Supreme Court reasoned that the sentences were not to be considered separately, but "as composing a continuous stream." Id.

[3]Petitioner was initially sentenced in to life imprisonment on October 2003, but his sentence was modified to twenty-one years imprisonment on October 25, 2004. On Demand Court Records, Garvin County, Case No. CF-2003-212.

the following reasons.

### B.  GROUND ONE - EXCLUSION OF VIDEOTAPE

In his first ground for relief, Petitioner claims that the trial court's decision to exclude the dashboard videotape of his arrest was error. Brief in Support of Petition, p. 5. Specifically, he claims that failure to admit the tape "gutted" his trial defense and deprived him of his constitutional right to a fair trial, resulting in a fundamental miscarriage of justice. Id. at 4.  Petitioner claims that the videotape of his arrest would have impeached the arresting officer's testimony regarding the presence of probable cause, and his claim that Petitioner was speeding and resisted arrest.  Id. at 6.  In reversing Petitioner's first conviction, the Oklahoma Court of Criminal Appeals found that Trooper Anderson's repeated references to other crimes, Petitioner's dangerousness, and methamphetamine manufacture could "only have improperly influenced the jury's conclusion that, if methamphetamine was present at the scene, it must have been [Petitioner's]."  Response, Ex. 7 p. 2.

On retrial, the trial judge reviewed the files and studied the opinion of the Oklahoma Court of Criminal Appeals, and entered an order in limine providing that "No question shall be asked which directly or indirectly elicits testimony of any other crime.  No witness response shall be given which mentions any other crime regardless of the question asked." Response, Ex. 8 (minute order, Sept. 28, 2005). The trial judge also entered the following minute order regarding the admissibility/redaction of the videotape:

> Argument held re: admissibility and possible redaction of the Trooper's videotape which tape is said to be 52 minutes long. ... After the jury left the court views the tape for 2 or 3 minutes.  It is apparent that at its inception the

> tape introduces references to other crimes, contrary to the ruling of the Court of Criminal Appeals' instructions. Redaction is impractical given time restraints and would unfairly prejudice the State's case by removing the context of the Trooper's actions as it relates to the resisting arrest charge.

Response, Ex. 9 (court minute, Sept. 29, 2005). In its appellate review of Petitioner's claim regarding exclusion of the videotape at his second trial, the Oklahoma Court of Criminal Appeals stated:

> The decision to admit evidence is discretionary with the trial court whose decision will not be disturbed on appeal unless clearly erroneous or manifestly unreasonable. Considering the facts of this case, we find no clear abuse of discretion. The probative value of the videotape was substantially outweighed by the danger of unfair prejudice. Finding no error, this appeal is denied.

Response, Ex. 3 p. 2 (Summary Opinion, Case No. M-2005-0970 (Oct. 25, 2006) (citations omitted).

Respondent contends that issues relating to the admissibility of evidence are generally questions of state law, and that a petitioner bears a heavy burden to demonstrate that a trial court's decision to exclude evidence violated his constitutional rights. Response, p. 5. He claims that the trial court's decision to exclude the videotape in Petitioner's second trial was in accordance with Oklahoma's evidentiary rules and was particularly proper in light of the fact that Petitioner's first convictions had been overturned due to the introduction of other crimes evidence; other crimes that were also referenced in the videotaped interaction between Petitioner and Trooper Anderson. Id. at 13.

"State court rulings on the admissibility of evidence may not be questioned in federal habeas corpus proceedings unless they render the trial so fundamentally unfair as to

constitute a denial of federal constitutional rights." Duvall v. Reynolds, 139 F.3d 768, 787 (10th Cir. 1998); see also Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) ("On habeas review, we will not disturb the state court's evidentiary rulings unless the appellant demonstrates that the court's error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process."). The materiality of the excluded evidence to the defense determines if the petitioner was deprived of a fundamentally fair trial. Richmond v. Embry, 122 F.3d 866, 872 (10th Cir. 1997). Evidence is material if, in light of the record as a whole, the exclusion might have affected the trial's outcome by creating a reasonable doubt that would not have otherwise existed. See id. at 874.

First, there is nothing on the videotape that would have been relevant to any valid defense to the resisting arrest charge. Under Oklahoma law, an individual may resist an unlawful arrest for a misdemeanor not committed in the officer's presence, Walters v. State, 403 P.2d 267, 275 (Okla. Crim. App.1965), but the testimony was clear that Trooper Anderson did observe Petitioner commit the offense of speeding in his presence, saw items associated with the manufacturing of methamphetamine and the Petitioner resisted the trooper's attempts to frisk him, and nothing on the videotape was inconsistent with that evidence. Trial Tr. Vol. II, p. 158-59 (Transcript of Jury Trial Proceedings, Sept. 29-30, 2005); Trent v. State, 777 P.2d 401, 403 (Okla. Crim. App. 1989).

Second, the trial judge reviewed the videotape, and found that it contained several references to other crimes – evidence specifically found to have been improperly admitted in Petitioner's first trial. Response, Ex. 9. Indeed, the undersigned's review of the tape

9

reveals that even in the initial moments Trooper Anderson asks if Petitioner remembers him as the one who had put him in jail before, and whether Petitioner is going to try to blow him up with a methamphetamine lab again. Videotape, Ex. 4 #1 (Jan. 29, 2004). Later in the tape, he tells Petitioner that he is aware that Petitioner has a record of assault and battery on police officers. Id.

Third, the undersigned finds that the trial judge's determination that redaction of the videotape created a risk of unfair prejudice to the State is neither clearly erroneous or manifestly unreasonable; redaction of the tape would have distorted the context of Trooper Anderson's actions in relation to the resisting arrest charge, and Trooper Anderson testified candidly as to both his language and actions during the stop.

The undersigned thus finds that exclusion of the tape did not deprive Petitioner of his right to a fundamentally fair trial, and relief should be denied on the first ground in support of the application for a writ of habeas corpus.

### C.  GROUNDS TWO AND THREE

In his next two grounds for relief, Petitioner alleges that without the videotape the existence of probable cause for his arrest is questionable, and that his appellate counsel was ineffective for failing to raise the exclusion of the videotape following his second conviction for resisting arrest. Brief in Support of Petition, p. 8, 9. Petitioner did raise the issue that he was unlawfully seized or arrested in his state application for post-conviction relief, and the trial court and Oklahoma Court of Criminal Appeals both found the claim to have been waived because it could have been raised on direct appeal. Response, Exs. 4, 5. In its Order

Affirming Denial of Post-Conviction Relief, the Oklahoma Court of Criminal Appeals stated: "After a review of Petitioner's pleadings we find Petitioner is not entitled to relief. Further any issue that could have been previously raised, but was not, is waived and may not be the basis of a subsequent post-conviction application." Response, Ex. 5. Respondent contends that the second and third grounds in support of the Petition are thus procedurally barred and cannot be considered on federal habeas review. Response, p. 15-16. Respondent also contends that even if the claims are not procedurally barred, they lack merit.

A federal habeas court will not review a claim that has been "defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 ( 10th Cir. 1998). "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision" Id.  "A state court's finding is deemed to be adequate if it is applied evenhandedly; that is, if it is strictly or regularly followed." Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994) (quotations omitted). In general, Oklahoma's application of waiver principles to claims raised in a post-conviction proceeding is both an "independent" and " adequate" state procedural bar. Id. at 1356.

Once the State pleads the affirmative defense of an independent and adequate state procedural bar, the burden to place that defense in issue shifts to Petitioner. This must be done, at a minimum, by specific allegations by Petitioner as to the inadequacy of the state procedure. Hooks v. Ward, 184 F.3d 1206, 1217 (10th Cir. 1999). Petitioner's third ground

for relief can be construed as an effort to sustain this burden by contending that he was denied the effective assistance of appellate counsel, as well as a stand-alone claim. However, Petitioner failed to raise this claim in his application for post-conviction relief, and Oklahoma's waiver provision applies even when the claim that could have been but was not raised in a first application for post-conviction relief is an ineffective assistance of appellate counsel claim. See Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir.1998) (finding Oklahoma's procedural bar against claims brought in a second application for post-conviction relief that could have been and were not raised in a previous application adequate to bar habeas review of an ineffective assistance of counsel claim in a death penalty case). Thus, Petitioner's ineffective assistance of appellate counsel claim may only serve as cause to excuse the procedural default of another habeas claim if he can show cause and prejudice excusing the procedurally defaulted ineffective assistance of appellate counsel claim itself. See Edwards v. Carpenter, 529 U.S. 446, 450-51 (2000). However, for purposes of this Report and Recommendation, the merits of Petitioner's underlying claim that Trooper Anderson lacked probable cause for his stop and arrest will be reviewed despite the application of procedural bar to its review as an independent claim. Where such an issue "may be more easily and succinctly affirmed on the merits," judicial economy counsels in favor of such a disposition. Miller v. Mullin, 354 F.3d 1288, 1297 (10th Cir. 2004) (quoting Romero v. Furlong, 215 F.3d 1107, 1111 (10th Cir. 2000)). Accordingly, in the interest of judicial economy, Petitioner's claims in Grounds Two and Three will be addressed on the merits.

**1.  Lack of Probable Cause**

As noted, Petitioner claims that exclusion of the videotape impeded his ability to show the jury that Trooper Anderson knowingly violated his Fourth Amendment rights by arresting him without probable cause. Brief in Support of Petition, p. 8.  The undersigned finds this claim to be meritless.  At the second trial, Trooper Anderson testified that while traveling on Interstate 35, he met a pickup truck speeding, traveling approximately 90 miles an hour as shown by his radar, and so crossed the center median and caught up with the vehicle.  Trial Tr., Vol. I, p. 158-59 (Transcript of Jury Trial conducted on Sept. 29-30, 2005). When he finally stopped the pickup truck, he noticed a gas can with hose attached and associated it with something used in the manufacture of methamphetamine.  Id. at 161.  The trooper also recognized Petitioner from a previous arrest and he believed Petitioner to have prior charges of assaults on a police officer.

Once Petitioner exited the truck, Trooper Anderson brought him between the truck and his patrol car and near a ditch on the side of the road to get away from traffic.  Trial Tr., Vol. I, p. 163 (Transcript of Jury Trial conducted on Sept. 29-30, 2005).  Trooper Anderson asked Petitioner to place his behind his head, and although he did so at first, he took a couple of steps away and shoved one hand in the front of his pants. Id. at 164.  Trooper Anderson testified that the two then began wrestling as Trooper Anderson attempted to get Petitioner's hands behind his back believing he might have a gun.  Id. at 165.  Petitioner eventually got away and went the front of pickup truck, dropped to one knee, and again placed his hands in his pants.  Id. at 165-69.  At that time Trooper Anderson called for back up and went to

his patrol car and retrieved his shotgun. Id. 168-69. He testified that Petitioner then complied with his further requests. Id. at 171.

Under Oklahoma law, a warrantless arrest is authorized if a person commits or attempts to commit a public offense in the presence of the officer. See Okla. Stat. tit. 22, § 196(1). Oklahoma case law is in accordance with United States Supreme Court precedent providing that a warrantless arrest is lawful under the Fourth Amendment if there is probable cause to believe the person arrested has committed an offense. See, e.g. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); Michigan v. Summers, 452 U.S. 692, 700 (1981) (to be constitutional, formal arrests and seizures that resemble formal arrests must be supported by probable cause). The record clearly demonstrates sufficient evidence of probable cause to support Petitioner's arrest in this case. Trooper Anderson testified that he personally observed Petitioner driving in excess of the posted speed limit-- clearly a traffic violation. According to Trooper Anderson, he then conducted a traffic stop by turning on his lights as he followed Petitioner. Such traffic stop would have been justified under the Fourth Amendment. United States v. Bustillos-Munoz, 235 F.3d 505, 512 (10th Cir. 2000) (holding that a traffic stop must be reasonable, that is, the stop must be "based on an observed traffic violation" or "the police officer [must have a] reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring[]"); see also United States v. Ramstad, 308 F.3d 1139, 1144 (10th Cir. 2002) (stating that a traffic stop

is justified if a police officer has probable cause to believe a traffic violation has occurred or has "a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction"). Trooper Anderson also personally observed items associated with the manufacture of methamphetamine, Petitioner's failure to comply with his directions, and actions consistent with an attempt to access a concealed weapon of some sort. Furthermore, the undersigned finds that there is nothing in the excluded videotape that is inconsistent with Trooper Anderson's testimony regarding his personal observation of the events leading to Petitioner's arrest. Thus, its exclusion could not have prejudiced Petitioner's attempt to show the initial seizure was without probable cause. Therefore, there is no merit to Petitioner's claim in Ground Two.

Relief should also be denied on Petitioner's claim of ineffective assistance of appellate counsel. The familiar standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) applies equally to ineffective assistance claims concerning trial and appellate counsel. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). Petitioner must "establish that appellate counsel was 'objectively unreasonable' in failing to assert [a] claim on direct appeal, and that there is a reasonable probability that, but for counsel's failure to raise the issue, [the petitioner] would have prevailed in challenging his . . . conviction [ ] on direct appeal." Hain v. Gibson, 287 F.3d 1224, 1231 ( 10th Cir. 2002). Application of Strickland to an ineffective assistance of appellate counsel claim requires the Court to "look to the merits of the omitted issue." Id. Unless there is a reasonable probability that the omitted

claim would have resulted in Petitioner obtaining relief on appeal, there is no ineffective assistance of appellate counsel under the Sixth Amendment. Neill v. Gibson, 278 F.3d 1044, 1057 n. 5 (10th Cir. 2001). Based upon the evidence adduced at trial, the undersigned finds that there is no reasonable probability that inclusion of the videotape exclusion/probable cause issues on appeal would have resulted in Petitioner obtaining relief from his resisting arrest conviction. Thus, under the applicable standard, there is no ineffective assistance of appellate counsel, and relief should be denied on Ground Three.

## **RECOMMENDATION**

Based on the foregoing findings, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner's motion for a writ of mandamus [Doc. No. 2] is hereby denied as moot.[4] Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court on or before September 24, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is further advised that failure to file a timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all the issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[4]By this motion, Petitioner had sought a copy of the Oklahoma Court of Criminal Appeals order affirming denial of post-conviction relief, but that document was included as Ex. 5 in the Response, which was served upon Petitioner. Response, p. 26.

**ENTERED this 4th day of September, 2008**.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE